R. J. TUCKER v. G. F. ALMOND AND WIFE, LESTA ALMOND.

(Filed 22 January, 1936.)

1. **Executors and Administrators D f: Judgments H a—Ordinarily, judgment against representative is not a lien on lands of estate.**

A judgment against an executor or administrator in his representative capacity merely establishes the debt sued on and does not constitute a lien upon the lands of the estate, in the absence of a stipulation in the judgment to the contrary, until leave of court is granted for execution for failure of the representative to pay the ratable part of such judgment. N. C. Code, 131, 132, 166.

2. **Deeds C h—Judgments against personal representative held not lien on lands in violation of warranty against encumbrances.**

A warranty deed was not registered until several years after the death of the grantor, during which time several judgments were obtained against the personal representative of the grantor. The grantee in the deed sold same after the judgments had been docketed to a purchaser for value by warranty deed. The purchaser instituted this action against his grantor, contending that the judgments against the estate of the original grantor constituted a lien on the land in violation of the warranty against encumbrances. *Held:* Under the provisions of statutes, N. C. Code, 131, 132, 166, the judgments did not constitute a lien on the land in violation of the warranty against encumbrances.

APPEAL by defendants from *McElroy, J.,* at October Civil Term, 1935, of STANLY. Reversed.

This is a controversy without action, as follows:

"Pursuant to section 626 of North Carolina Consolidated Statutes, plaintiff and defendants respectively submit to the court the following agreed facts as a controversy without action, and pray an adjudication thereupon:

"1. That plaintiff and defendants are residents of Stanly County, North Carolina.

"2. That on 7 September, 1922, G. D. Troutman and wife, M. A. Troutman, sold to G. F. Almond the lands hereinafter described for $1,250, and the same date executed, acknowledged, and delivered to the said G. F. Almond a warranty deed to said land: 'It being lots Nos. 128-130-132 in "West End," in the suburb of the town of Albemarle, as shown by blue print made by E. M. Eutsler Engineering Company showing the subdivision No. 2 of the lands contained within the boundaries of a deed of conveyance made by R. L. Lowder and wife, O. B. Lowder, to George D. Troutman, under date of 1 May, 1920, as recorded in the register's office of Stanly County, in Book No. 62, on page 225, etc., said blue print or map being recorded in the office of the

register of deeds of Stanly County, in Book No. 1 of Maps or Plots, on page 225.'

"3. That G. D. Troutman died intestate on 19 April, 1928, and Mrs. M. A. Troutman duly qualified as administratrix of the estate of G. D. Troutman, deceased, on 21 April, 1928, as will appear by reference to Book of Administrators No. 2, page 73, in the office of the clerk of the Superior Court for Stanly County; that subsequently thereto, to wit, 19 January, 1929, D. S. Lippard duly qualified as administrator *de bonis non* of the estate of G. D. Troutman, deceased, as will appear from Book of Administrators No. 2, page 108, in the office of the clerk of the Superior Court for Stanly County.

"4. That on 20 July, 1928, the First National Bank of Albemarle obtained a judgment in the county court of Stanly County against W. H. Cranford, J. C. Bostain, T. R. Burleson, and Mrs. M. A. Troutman, administratrix of the estate of G. D. Troutman, deceased, for $337, together with interest thereon from 16 September, 1925, less a $40 credit as of 8 July, 1925, and the cost of the court, to wit, $16.70; that said judgment was docketed in the office of the clerk of the Superior Court for Stanly County on 20 July, 1928, in Judgment Book No. 6, page 69; that thereafter, to wit, 24 July, 1928, there was paid upon said judgment $122.01; that the balance of said judgment is now due and unpaid.

"5. That C. B. Crook obtained judgment against Mrs. M. A. Troutman, administratrix of the estate of G. D. Troutman, in the Superior Court for Stanly County at the October Term, 1928, of Superior Court for Stanly County, for $220, and interest from 1 September, 1926, and for the cost of the action, to wit, $29.85; that said judgment was docketed on 8 October, 1928, in the office of the clerk of the Superior Court for Stanly County, in Judgment Book No. 6, page 76; that thereafter, to wit, 11 January, 1930, two payments were made upon said judgment, to wit, $124.68 and $43.99, but the balance of said judgment is now due and unpaid.

"6. That the Stanly Bank and Trust Company obtained judgment against D. S. Lippard, administrator *de bonis non* of the estate of G. D. Troutman, deceased, and R. L. Brown, in the Superior Court of Stanly County on 22 September, 1930, for $840, and interest from 31 October, 1929, subject to a credit of $181.14 as of 1 November, 1929, and cost, to wit, $10.60; that said judgment was docketed on 11 July, 1931, in the office of the clerk of the Superior Court for Stanly County in Judgment Book No. 8, page 17, and the entire judgment is now due, subject to the payments above enumerated.

"7. That the Bank of Badin obtained judgment against J. M. Boyett and D. S. Lippard, administrator *de bonis non* of the estate of G. D.

Troutman, deceased, in the Superior Court for Stanly County on 7 September, 1931, for $725, and interest from 15 July, 1930, and the cost, to wit, $11.85; that said judgment was docketed 10 September, 1931, in the office of the clerk of the Superior Court for Stanly County, in Judgment Book No. 8, page 22; that the entire judgment, interest, and cost is now due and unpaid.

"8. That the personal property belonging to the estate of G. D. Troutman, deceased, was insufficient to pay all indebtedness outstanding and due by said estate.

"9. That all of the real property belonging to G. D. Troutman or to the estate of G. D. Troutman, deceased, unless the realty described in paragraph 2 be considered as property of the said G. D. Troutman or of the estate of the said G. D. Troutman, deceased, and may be subjected to the payment of the judgments referred to in paragraphs 4, 5, 6, and 7, has been sold to make assets to pay the debts of the estate of the said G. D. Troutman, and the proceeds derived from said sales have been applied to the payment of the debts of said estate, and D. S. Lippard, administrator *de bonis non* of the estate of G. D. Troutman, deceased, filed his final account and settlement as said administrator in the office of the clerk of the Superior Court for Stanly County on 26 April, 1930, and said account and settlement is recorded in Record of Settlements No. 7, page 562, but said report of said administrator was never approved and confirmed until 10 October, 1935, but J. A. Little, clerk of the Superior Court for Stanly County, has stated that he has known no reason why said report, account, and settlement should not have been approved and confirmed on the date it was filed, to wit, 26 April, 1930.

"10. That on 23 May, 1935, G. F. Almond and wife, Lesta Almond, sold R. J. Tucker the land described in paragraph 2 for $800 and on same date executed and delivered to the said R. J. Tucker a warranty deed therefor; that said deed was properly probated and recorded in the office of the register of deeds for Stanly County on 23 May, 1935, in Book of Deeds No. 99, page 296.

"11. That between 7 September, 1922, and 23 May, 1935, G. F. Almond was in continuous and uninterrupted possession of the land described in paragraph 2 under and by virtue of the deed therein referred to.

"12. That in said deed executed by the said G. F. Almond and wife to R. J. Tucker, the said Almond and wife covenanted with plaintiff that said land was 'free from all encumbrances.'

"13. That the deed executed by G. D. Troutman and wife, M. A. Troutman, to G. F. Almond, dated 7 September, 1922, probated 5 June, 1935, was recorded in the office of the register of deeds for Stanly County on 6 June, 1935, in Deed Book 100, page 30.

"14. That at the time of the execution, delivery, and recordation of the deed executed by the said G. F. Almond and wife to R. J. Tucker, and at the time of the recordation of the deed from G. D. Troutman and wife to G. F. Almond, all of the above referred to judgments were outstanding, and were properly recorded in the office of the clerk of the Superior Court for Stanly County, as alleged.

"15. That plaintiff contends that where a grantor made a conveyance of land on 7 September, 1922, and died 19 April, 1928, which conveyance was recorded 5 June, 1935, that judgments obtained against the administrator of the said grantor's estate prior to the recordation of said deed are encumbrances against said land which was conveyed by the grantee of the intestate to plaintiff on 23 May, 1935. Defendant denies that said judgments are encumbrances against said land. Plaintiff contends that he should recover of the defendants the amount of the purchase price as damages. Defendant contends that said judgments are not encumbrances against said land and, therefore, plaintiff should recover nothing of defendants.

"Respectfully agreed to and submitted by R. J. Tucker, plaintiff, and Lesta Almond and G. F. Almond, defendants. Morton & Smith, attorneys for plaintiff, and W. E. Bogle, attorney for defendants.

"NORTH CAROLINA—STANLY COUNTY.

"R. J. Tucker, plaintiff, and G. F. Almond and wife, Lesta Almond, defendants, each being duly sworn, say that the controversy above set out is a real one, and that this proceeding is instituted in good faith to determine the rights of the parties thereto. R. J. Tucker, plaintiff. G. F. Almond and Lesta Almond, defendants.

"Sworn to and subscribed before me, this 10 October, 1935. Lenna J. Rowland, Notary Public. (Seal.) My commission expires 29 October, 1936."

The judgment in the court below is as follows:

"This controversy without action, coming on to be heard at the October Term, 1935, of the Superior Court of Stanly County, before his Honor, P. A. McElroy, and being heard upon the agreed statement of facts, and it appearing to the court, and the court being of the opinion, that the judgments referred to and set out in said statement of facts of the controversy without action are encumbrances against the land therein described, and that the amount of said judgments exceeds the purchase price of $800 paid for said land by the plaintiff grantee:

"It is therefore ordered, adjudged, and decreed that said judgments be and the same are hereby declared encumbrances against the land described in the facts of the controversy without action, and that the plain-

tiff recover of the defendants the sum of $800, together with interest thereon from the date of the conveyance by the said F. G. Almond and wife, Lesta Almond, to R. J. Tucker, and that said defendants be taxed with the cost of this action. P. A. McElroy, Judge presiding."

The only exception and assignment of error made by defendants was to the signing of the judgment set out in the record.

*Morton & Smith for plaintiff.*
*W. E. Bogle for defendants.*

CLARKSON, J. The question involved: Do judgments entered against administrators, as set out in the agreed statement of facts, create an encumbrance on land conveyed by deed prior to his death, when deed is not recorded until after the judgments are docketed against the administrator? We do not think the judgments against the administrator, under the facts and circumstances of this case, were encumbrances against the land in controversy.

In the agreed facts, section 12, is the following: "That in said deed executed by the said G. F. Almond and wife to R. J. Tucker, the said Almond and wife covenanted with plaintiff that said land was 'free from all encumbrances.' "

Black's Law Dictionary (3d Ed.), p. 947—Encumbrance, see Incumbrance—citing a wealth of authorities, says: "Any right to or interest in land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. . . . A claim, lien, charge, or liability attached to and binding real property. . . . An encumbrance may be a mortgage; a judgment lien; an inchoate right of dower; a mechanic's lien; a lease; a restriction in deed; encroachment of a building; an easement or right of way; accrued and unpaid taxes; the statutory right of redemption. . . . Incumbrancer—The holder of an incumbrance, *e.g.,* a mortgage, on the estate of another."

In 7 R. C. L. (Covenants), part sec. 48, p. 1134, is the following: "The contract to convey free from encumbrances ordinarily has reference to encumbrances of liens actually existing when the contract is executed, or thereafter created, or suffered by the act or default of the vendor." Sec. 31, pp. 1136-7: "Encumbrances within the meaning of the covenant against encumbrances include such interests therein or burdens as the following: A paramount right in the lands, a valid tax or assessment; an attachment, judgment, or mechanic's lien; a lien of an outstanding mortgage; a building restriction; and, as a general rule, that great variety of rights or interests in land, comprehended under the general term 'easements.' " *Hahn v. Fletcher,* 189 N. C., 729 (731)—a street assessment termed a statutory mortgage.

In *Eaton v. Doub,* 190 N. C., 14, the facts are entirely different, the judgment liens had attached and execution had been issued.

N. C. Code, 1935 (Michie), sec. 3309, in part, is as follows: "No conveyance of land, or contract to convey, or lease of land for more than three years shall be valid to pass any property, as against creditors or purchasers for a valuable consideration, from the donor, bargainor, or lessor but from registration thereof within the county where the land lies," etc.

N. C. Code, *supra,* sec. 131: "No judgment of any court against a personal representative shall fix him with assets, except a judgment of the judge or clerk, rendered as aforesaid, or the judgment of some appellate court rendered upon an appeal from such judgment. All other judgments shall be held merely to ascertain the debt, unless the personal representative pleading expressly admits assets."

An absolute judgment against the representative neither fixes the defendant with assets nor disturbs the order of administration. It merely ascertains the debt sued on. *Dunn v. Barnes,* 73 N. C., 273, 277.

N. C. Code, *supra,* sec. 132: "All executions issued upon the order or judgment of the judge or clerk, or of any appellate court, against any personal representative, rendered as aforesaid, shall run against the goods and chattels of the deceased, and if none, then against the goods and chattels, lands and tenements of the representative. And all such judgments docketed in any county shall be a lien on the property for which execution is adjudged as fully as if it were against him personally."

N. C. Code, *supra,* sec. 166: "An action may be brought by a creditor against an executor, administrator, or collector on a demand at any time after it is due, but no execution shall issue against the executor, administrator, or collector on a judgment therein against him without leave of the court, upon notice of twenty days and upon proof that the defendant has refused to pay such judgment its ratable part, *and such judgment shall be a lien on the property of the defendant only from the time of such leave granted."* (Italics ours.)

The admitted facts show that G. F. Almond paid $1,250 for the property in 1922 and sold it for $800 in 1935. The sale by G. F. Almond to R. J. Tucker in 1935 was a *bona fide* sale for value. The whole transaction was in good faith and for value.

We do not think the judgments against the administrator a lien on the property in controversy, and the covenant in the deed "free from all encumbrances" in the ordinary and common acceptance of the words does not make the judgments encumbrances.

For the reasons given, the judgment of the Court below is
Reversed.